1  Mark E. Merin (State Bar No. 043849)
   Paul H. Masuhara (State Bar No. 289805)
2  LAW OFFICE OF MARK E. MERIN
3  1010 F Street, Suite 300
   Sacramento, California 95814
4  Telephone:    (916) 443-6911
   Facsimile:    (916) 447-8336
5  E-Mail:       mark@markmerin.com
               paul@markmerin.com
6
7  Attorneys for Plaintiffs
   ESTATE OF DELION JOHNSON,
8  D.J., M.J., and MICHELLE COOPER

9              UNITED STATES DISTRICT COURT

10            EASTERN DISTRICT OF CALIFORNIA

11               SACRAMENTO DIVISION

12 | ESTATE OF DELION JOHNSON, D.J., M.J., | Case No.
   | and MICHELLE COOPER, |
13 | | **COMPLAINT FOR VIOLATION OF**
   | | **CIVIL AND CONSTITUTIONAL RIGHTS**
14 |                Plaintiffs, |
   | | **DEMAND FOR JURY TRIAL**
15 | vs. |
16 | COUNTY OF SACRAMENTO, SACRAMENTO
17 | COUNTY SHERIFF'S DEPARTMENT, JIM
   | COOPER, and DOE 1 to 20,
18 |
   |                Defendants.
19
20                    **INTRODUCTION**

21        35-year-old DELION JOHNSON was inadequately booked and monitored by jail staff as a

22 pretrial detainee at the Sacramento County Main Jail in custody of the COUNTY OF SACRAMENTO

23 and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, resulting in his death by overdose on

24 April 5, 2023.

25                 **JURISDICTION & VENUE**

26        1.     This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 (in that they

27 arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to

28 address deprivations, under color of state authority, of rights, privileges, and immunities protected by the

1

U.S. Constitution). This Court has jurisdiction of the state claims under 28 U.S.C. § 1367.

2.      Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3.      Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Sacramento, California.

## EXHAUSTION

4.      On May 11, 2022, the ESTATE OF DELION JOHNSON, D.J., M.J., and MICHELLE COOPE submitted a government claim to the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT relating to the claims asserted in this action. (Claim No. L2300765-0001.)

5.      By June 29, 2023, the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT failed or refused to act on the government claim, pursuant to California Government Code section 912.4.

## PARTIES

6.      Plaintiff ESTATE OF DELION JOHNSON appears by and through real-parties-in-interest Plaintiffs D.J. and M.J., the biological children of DELION JOHNSON, who brings this action pursuant to California Code of Civil Procedure section 377.30. Plaintiffs D.J. and M.J. brings this action as the successors-in-interest on behalf of DELION JOHNSON. Plaintiffs D.J. and M.J.'s declaration regarding status as successors-in-interest to DELION JOHNSON is attached, pursuant to California Code of Civil Procedure section 377.32.

7.      Plaintiff D.J. is a resident of the State of California, County of Sacramento. Plaintiff D.J. is the biological son of DELION JOHNSON. Plaintiff D.J. brings this action in a representative capacity, as a successor-in-interest on behalf of DELION JOHNSON; and in an individual capacity, on behalf of himself.

8.      Plaintiff M.J. is a resident of the State of California, County of Sacramento. Plaintiff M.J. is the biological daughter of DELION JOHNSON. Plaintiff M.J. brings this action in a representative

2

1  capacity, as a successor-in-interest on behalf of DELION JOHNSON; and in an individual capacity, on

2  behalf of herself.

3      9.    Plaintiff MICHELLE COOPER is a resident of the State of California, County of San

4  Joaquin. Plaintiff MICHELLE COOPER is the biological mother of DELION JOHNSON. Plaintiff

5  MICHELLE COOPER brings this action in an individual capacity, on behalf of herself.

6      10.    Defendant COUNTY OF SACRAMENTO is located in the State of California. Defendant

7  COUNTY OF SACRAMENTO is a "public entity," pursuant to California Government Code section

8  811.2.

9      11.    Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT located in the State

10  of California, COUNTY OF SACRAMENTO. Defendant SACRAMENTO COUNTY SHERIFF'S

11  DEPARTMENT is a "public entity," pursuant to California Government Code section 811.2.

12      12.    Defendant JIM COOPER is and was, at all times material herein, a law enforcement

13  officer and Sheriff for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY

14  SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law.

15  Defendant JIM COOPER is sued in an individual capacity.

16      13.    Defendants DOE 1 to 20 are and/or were agents or employees of Defendants COUNTY

17  OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the

18  scope of agency or employment and under color of state law. Defendants DOE 1 to 10 are sued by their

19  fictitious names and their true and correct names and identities will be substituted when ascertained.

20  **GENERAL ALLEGATIONS**

21      14.    At all times relevant herein, all wrongful acts described were performed under color of

22  state law and/or in concert with or on behalf of those acting under the color of state law.

23      15.    On April 4, 2023, DELION JOHNSON was booked into the custody of Defendants

24  COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT at the

25  Sacramento County Main Jail, 651 I Street, Sacramento, CA 95814.

26      16.    DELION JOHNSON was booked into custody as a pre-trial detainee.

27      17.    DELION JOHNSON was booked on serious charges, including attempted murder.

28      18.    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

3

DEPARTMENT's jail staff, including Defendants DOE 1 to 20, inadequately processed and booked DELION JOHNSON, including inadequately searching his person.

19.    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail staff, including Defendants DOE 1 to 20, inadequately classified, assigned, and housed DELION JOHNSON, including where the seriousness of his charges warranted isolated and frequently-supervised housing based on the risk of self-harm or suicide.

20.    On information and belief: DELION JOHNSON smuggled lethal quantities of illicit substances into the jail due to Defendants DOE 1 to 20's inadequate processing and booking.

21.    On April 5, 2023, DELION JOHNSON was confined in a holding cell in the jail with several other inmates.

22.    The holding cell had audio/video surveillance capabilities which Defendants DOE 1 to 20 could utilize to monitor inmates and occurrences inside of the cell.

23.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs did not obligate or require jail staff, including Defendants DOE 1 to 20, adequately to monitor the holding cell, despite the ability to do so.

24.    On information and belief: DELION JOHNSON distributed illicit substances to fellow inmates inside of the holding cell.

25.    On information and belief: DELION JOHNSON ingested lethal quantities of an illicit substance, causing him to experience a medical emergency.

26.    On information and belief: DELION JOHNSON was visible on the jail's surveillance video passing-out and ingesting something (possibly pills) from a small bag.

27.    Defendants DOE 1 to 20 inadequately monitored, checked, and supervised the holding cell in which DELION JOHNSON was housed.

28.    Defendants DOE 1 to 20 failed to observe DELION JOHNSON distributing and ingesting an illicit substance but could have done so, including by intervening and preventing DELION JOHNSON from ingesting a lethal quantity of illicit substances.

29.    Defendants DOE 1 to 20 failed to timely observe DELION JOHNSON experiencing a medical emergency but could have done so, including by responding to the holding cell more quickly and

4

1   administering Narcan, if there was indication of an overdose; or, providing cardio-resuscitation measures,

2   if there was a medical emergency.

3        30.    Around 4:16 p.m., DELION JOHNSON was pronounced dead.

4                              **POLICY / CUSTOM ALLEGATIONS**

5        31.    Defendant JIM COOPER, in his capacity as Sheriff, is and was a final policymaking

6   authority for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

7   DEPARTMENT, including as it relates to the maintenance and operation of jail and detention facilities;

8   training, supervision, and discipline of staff acting under his command; and the safekeeping of

9   inmates/prisoners in his custody. *See* Cal. Const. Art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code §

10  4006; Cal. Gov. Code § 26605; Cal. Gov. Code § 26610. Defendant JIM COOPER has been employed

11  by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

12  DEPARTMENT since 1979, including in supervisory and policymaking capacities since at least 1997.

13  Defendant JIM COOPER has served as Sheriff since December 2014.

14       32.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

15  DEPARTMENT, and JIM COOPER, including subordinate personnel, Defendants DOE 1 to 20,

16  maintain and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in

17  the following deficiencies:

18            (a)    Failure adequately to book, intake, and receive inmates into the jail;

19            (b)    Failure adequately to classify, assign, and house inmates within the jail;

20            (c)    Failure adequately to discern, assess, and consider risk factors of inmates within

21  the jail;

22            (d)    Failure adequately to observe, monitor, and supervise inmates within the jail;

23            (e)    Failure adequately to staff the jail with necessary officials and personnel;

24            (f)    Failure adequately to detect and investigate the presence of contraband within the

25  jail;

26            (g)    Failure adequately to intervene and intercede when dangerous and emergency

27  conditions are present inside the jail; and

28            (h)    Failure adequately to summon and provide necessary medical care to inmates

1    within the jail.

2    33.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

3    DEPARTMENT, and JIM COOPER, including subordinate personnel, Defendants DOE 1 to 20, were

4    deliberately indifferent to DELION JOHNSON's safety and health, and knew or should have known that

5    DELION JOHNSON was at risk of harm, based on the following circumstances:

6         (a)    On information and belief: Jail staff, including Defendants DOE 1 to 20,

7    inadequately booked, intaked, and received DELION JOHNSON into the jail;

8         (b)    On information and belief: Jail staff, including Defendants DOE 1 to 20,

9    inadequately classified, assigned, and housed DELION JOHNSON at the jail;

10        (c)    Jail staff, including Defendants DOE 1 to 20, inadequately discerned, assessed,

11   and considered risk factors relating to DELION JOHNSON at the jail;

12        (d)    Jail staff, including Defendants DOE 1 to 20, inadequately observed, monitored,

13   and supervised DELION JOHNSON within the jail;

14        (e)    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

15   SHERIFF'S DEPARTMENT, and JIM COOPER inadequately staffed the jail with necessary officials

16   and personnel;

17        (f)    Jail staff, including Defendants DOE 1 to 20, inadequately detected and

18   investigated the presence of contraband in and around DELION JOHNSON within the jail;

19        (g)    Jail staff, including Defendants DOE 1 to 20, inadequately intervened and

20   interceded when DELION JOHNSON was in danger and experiencing an emergency condition inside the

21   jail; and

22        (h)    Jail staff, including Defendants DOE 1 to 20, inadequately summoned and provide

23   necessary medical care to DELION JOHNSON within the jail.

24   34.    <u>National Standards</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO

25   COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are non-compliant

26   with widely-accepted jail standards, including those set forth by the National Commission on

27   Correctional Health Care's ("NCCHC") "Standards for Health Services in Jails."

28   35.    <u>*Mays* Consent Decree</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO

6

COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are largely non-compliant with the terms of the court-ordered consent decree issued in *Mays v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:18-cv-02081-TLN-KJN. Therein, the plaintiffs alleged numerous "dangerous, inhumane and degrading conditions" at Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities. In June 2019, Defendant COUNTY OF SACRAMENTO settled the case and agreed, *inter alia*, to changes to jail staffing, facilities, inmate health services, and custodial practices, including the creation and enforcement of polices and trainings that ensure compliance with Americans with Disabilities Act ("ADA") requirements, and improving the delivery of medical care through timely referrals, responses to requests for care and medication disbursement, chronic care treatment plans, appropriate clinic space, and staff training. (<https://www.saccounty.gov/news/latest-news/Pages/County-Jail-Class-Action-Lawsuit-Agreement-Reached.aspx>; <https://www.disabilityrightsca.org/press-release/settlement-approved-in-sacramento-county-jail-class-action-to-ensure-better-treatment>; *see also* <https://www.sacsheriff.com/pages/transparency.php>.) Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities are subject to reporting requirements and quarterly monitoring reports prepared by court-appointed experts, pursuant to the Consent Decree. (*Mays* ECF No. 149.) Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT have failed to achieve compliance with the terms of the consent decree, as demonstrated by monitoring reports and the 2022–23 Sacramento County Grand Jury. For example:

(a)     The 2022–23 Sacramento County Grand Jury Report concluded that "[t]he Sheriff's Department and the County [Board of Supervisors] have not acted upon key recommendations by consultants and court-mandated experts to address non-compliance issues." For example, "the County and [Sheriff's Department] have ignored key recommendations" in the following areas: "Physical Plant Deficiencies," "Staffing Deficiencies," "Leadership structure," and "Sanitation Deficiencies." (<https://www.sacgrandjury.org/docs/reports/22-23/gj-may-final-report-060223.pdf>.)

(b)     The 2022–23 Sacramento County Grand Jury Report found "Concerns with the Current Booking Process," including "holding cells" which are "crowded." "These crowded settings

violate the six-foot separation recommendation of the Mays Consent Decree." "At the Main Jail, inmates were seen lying on the floor in the holding cells, and the booking waiting room was overcrowded." (<https://www.sacgrandjury.org/docs/reports/22-23/gj-may-final-report-060223.pdf>.)

(c)     The First Monitoring Report of Suicide Prevention Practices found "53 of the 63 total suicide prevention provisions in Partial Compliance, with 10 suicide prevention provisions in Non-Compliance," and "[n]o provisions were in Substantial Compliance." The Second Monitoring Report of Suicide Prevention Practices found "[n]o progress" where "52 of the 63 total suicide prevention provisions were in Partial Compliance, with 11 suicide prevention provisions in Non-Compliance," and "[n]o provisions were in Substantial Compliance." The most recent Third Monitoring Report of Suicide Prevention Practices found "7 of the 63 suicide prevention provisions were in Substantial Compliance, 48 provisions in Partial Compliance, and 8 provisions in Non-Compliance. In sum, although there has been some improvement, given the fact that the County has had well over two years to demonstrate measurable compliance (with the federal court approving the Consent Decree on January 13, 2020), these findings continue to be disappointing." (*Mays* ECF No. 158-1.)

(d)     The Third Monitoring Report of the Medical Consent Decree found inmates "languishing in booking cells for up to three days" following booking, and the fact that "no action was taken by custody or health care staff to intervene . . . raise[d] serious questions about custody and health care training and supervision." (*Mays* ECF No. 162-1 at 74–76.)

(e)     On March 1, 2022, *Mays* class counsel sent a letter to Defendant COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT describing "ongoing jail overcrowding" causing jail staff's inability "to move people from the booking loop to the housing units in a timely manner. . . . Rather than being processed expeditiously following arrival at the jail, dozens of people are spending several days at a time sleeping on concrete floors in filthy, below-ground holding cells that are not intended for human habitation. . . . Several people reported that deputies failed to provide some meals while they were in the booking loop. People told us that they were treated 'like animals' when they asked the deputies passing by how long they would remain in the holding cells or how they could access the health care services they needed." (*Mays* ECF No. 153-4.)

36.     <u>Inmate Classification, Assignment, and Housing</u>: Defendants COUNTY OF

SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a policy or custom whereby jail staff inadequately classify and assign housing and cellmates to inmates, including inadequate assessment of dangers or vulnerabilities of inmates. For example:

(a)     On February 15, 2022, inmate Anthony Galley suffered a seizure caused by severe alcohol withdrawal and died at the Sacramento County Main Jail. Two days earlier, Galley was observed to be intoxicated upon booking and reported a documented history of alcohol use disorder and addiction. Jail staff failed to utilize or implement necessary alcohol detoxification protocols for Galley. Galley was confined to a holding cell without adequate monitoring and was ignored until he was found unresponsive. (*Mays* ECF No. 153-4, 162-1 at 76.) A civil rights lawsuit was filed. (*Galley v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:23-cv-00325-WBS-AC.) The case remains pending.

(b)     On July 24, 2021, inmate Timothy Noble died while withdrawing from opiates at the Sacramento County Main Jail. Days earlier, Noble was booked into the jail and began receiving treatment for opiate withdrawal. Jail staff did not provide Noble with special housing or monitoring. Noble's cellmate observed, but jail staff did not recognize, that Noble did not eat or drink for two days prior to his death. (SCSD Report No. 2021-224861; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Noble-2021-.pdf>.)

(c)     On August 11, 2020, inmate Herman Johnson died at the Sacramento County Main Jail. Johnson was in custody for attempted murder and a violation of parole. During his incarceration, Johnson was written-up for "behavior" in 51 reports and exhibited suicidal ideations on 18 occasions. But jail staff did not provide Johnson with special housing or monitoring and he was found unresponsive inside of his cell. (SCSD Report No. 2020-0256542; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Review-Johnson-Herman-.pdf>.)

(d)     On August 4, 2020, inmate Travis Welde overdosed at the Sacramento County Main Jail, and died of "hemopericardium due to a ruptured acute myocardial infarction resulting from mixed drug intoxication." Days earlier, Welde was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." But Welde's urine drug screening test was positive for amphetamines, methamphetamines, THC, MDMA, and opiates. Welde

9

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Johnson v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

was "engaging in erratic behavior, such as kicking his door and talking nonsensically," and, on August 2, 2020, was transferred to the mental health housing unit. Welde's condition continued to deteriorate, including "smear[ing] feces on himself and his cell walls," "talking to himself" and "yelling unintelligibly," "sweating" or appearing "wet," "flail[ing] his arms," and "sit[ting] and stand[ing] back up repeatedly." On August 3, 2020, Welde told staff that he was "detoxing." But jail staff ignored to threat that Welde was detoxing because "nursing staff believed Welde was outside the time period for detoxing from drug use due to the length of time Welde had been in the jail." Later, the jail's mental health staff concluded that Welde was "gravely disabled" and he was "placed him on the waiting list for a higher level of mental health care." On August 4, 2020, Welde was "standing naked at the cell door," "breathing heavily," and "bouncing back and forth on the balls of his feet." Jail staff asked Welde if he was okay and, in response, Welde "grunted and shook his head." But jail staff continued to ignore him. An hour later, Welde was found lying "face down and naked" on the floor. Jail staff continued to ignore him. Later, jail staff entered the cell and determined that Welde was not breathing and had no pulse. (SCSD Report No. 2020-248721; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Review-Welde-.pdf>.)

(e)     On December 31, 2019, inmate Richard Martin was beaten to death by inmate Nikolas Kallergis at the Rio Cosumnes Correctional Center, and died of "blunt force head injuries." Martin arrived at the jail and was subject to a classification review by jail staff which concluded that he did not require protective custody housing. But Martin's criminal history referenced California Penal Code section 290, which required registration upon conviction of certain sexual offenses. The same day he entered the jail and was classified and housed by jail staff, Martin was attacked by Kallergis while inside of an unmonitored bathroom facility, due to Martin's sex-offender status. (SCSD Report No. 2019-461518; <https://www.sacda.org/wp-content/uploads/2022/07/Martin-ICD.6.27.22.pdf>.)

(f)     On December 9, 2019, inmate Antonio Thomas was beaten into a coma by cellmate Joshua Vaden at the Sacramento County Main Jail, and later died from "complications of anoxic encephalopathy associated with assault." Thomas and Vaden had extensive mental health histories known to jail staff, and complaints reflecting difficulties with cellmates based on prior incarceration at the jail. Thomas was held on a probation violation, and Vaden was held on charges of murder. Thomas

10

and Vaden were housed together in the jail's general population. Vaden submitted a grievance that he did not want to be housed with Thomas which was ignored by jail staff. Vaden attacked Thomas, who repeatedly activated the emergency button in his cell during the attack. Jail staff called the cell in response to the emergency button's activation but, when no response was received, ignored the emergency button's activation. Later, jail staff received notice from an inmate that there was a "man down" in the cell. Jail staff responded to the cell and found Thomas unconscious, more than 10 minutes after the activation of the emergency button inside of the cell. The jail "supervisor's overview" of the classification and housing of Thomas and Vaden found no deficiencies or policy violations by jail staff. A civil rights lawsuit was filed and settled for $1,500,000. (*Estate of Thomas v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-00903-KJM-DB.)

(g)     On July 8, 2019, inmate Bryan Debbs was beaten, stabbed, and choked during a nearly 30-minute continuous assault by cellmate Christian Ento at the Sacramento County Main Jail, and later died of "complications of neck compression." Days earlier, Debbs and Ento were classified by jail staff as "gravely disabled" as housed together in a continuously video-monitored cell. Jail staff failed to observe the monitor as Ento and assaulted Debbs. A civil rights lawsuit was filed and partially settled for $600,000. (*Estate of Debbs v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-01153-TLN-DB.) The remainder of the case remains pending.

(h)     On June 11, 2019, inmate Andrew Armstead overdosed at the Sacramento County Main Jail, and died of "methamphetamine intoxication." Armstead was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." A day after booking, Armstead was summoned for a classification interview but failed to appear. Later, jail staff observed Armstead inside of his cell and non-responsive on a bunk. Later, Armstead's cellmate pressed the emergency intercom button inside the cell and reported that Armstead was non-responsive. Later, jail staff responded to the cell and observed that Armstead had no pulse. Armstead's blood was found to contain amphetamine and methamphetamine. (SCSD Report No. 2019-204534; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Armstead.pdf>.)

(i)     On April 13, 2019, inmate Simmie McDade was kicked and stomped during an assault by inmate Jesse Mansfield at the Sacramento County Main Jail, and later died of "blunt force

injuries to the head." McDade and Mansfield were confined in a "sobering cell." Jail staff failed to monitor the cell, despite the cell being continuously video-monitored. Jail staff conducted a cell check and observed Mansfield kicking McDade on the side of the head as McDade lay on the floor. Jail staff failed to possess keys necessary to open the cell, intervene, and provide aid to McDade during the attack. Jail staff left the cell, retrieved cell keys, and returned to open the cell door, as Mansfield continued to kick and stomp McDade on the head during jail staff's delayed response. Eventually, jail staff terminated Mansfield's assault on McDade. McDade coughed-up and choked on his own blood, struggled to breathe, turned "purple in color" as his face began to swell, and was unresponsive as blood run out of his mouth, nose, and his left ear. More than 10 minutes after Mansfield was discovered by jail staff assaulting McDade, medics from the Sacramento Fire Department arrived and took over McDade's medical treatment. (SCSD Report No. 2019-0127418; <https://www.sacda.org/wp-content/uploads/2022/07/McDade-ICD.6.27.22.pdf>.)

(j)   On June 16, 2017, inmate Clifton Harris was beaten into a coma by inmate Willie Roberson, and later died from his injuries. Jail staff housed Harris, a gay man, with Roberson, who was known to be violent and mentally ill. Shortly before the assault, Harris requested jail staff to change his cellmate assignment but jail staff failed to do so. Jail staff failed to monitor and intervene when Roberson beat Harris into a coma. (SCSD Report No. 2017-0197587; Sacramento News & Review, *'What happened to our brother?'* (Aug. 30, 2018), available at: <https://www.newsreview.com/sacramento/content/what-happened-to-our-brother/26996966/>.)

(k)   On January 16, 2015, inmate Choi Saeteurn was attacked and smothered with a blanket by inmate Khot Panyanouvong, and died from "blunt force injuries and asphyxia." Jail staff failed adequately to assign housing to and monitor Saeteurn and Panyanouvong. Saeteurn's body was discovered by jail staff at approximately 5:38 a.m. but medical staff did not arrive and attempt resuscitation efforts until approximately 5:52 a.m. Saeteurn died from blunt force injuries and asphyxia. (SCSD Report No. 15-12687; <https://www.sacda.org/wp-content/uploads/2019/12/In_Custody_Death_Review_-_Saeteurn_Choi.pdf>.)

(l)   On December 14, 2014, inmate Edward Larson was attacked by Inmate Ernest Salmons, and died from "blunt fore injuries," including a laceration to the forehead and multiple rib

fractures. Larson's previous cellmate had complained and received reassignment based on Larson's "hygiene, masturbating, and lewd comments." Larson was reassigned to housing with Salmons, who also complained of Larson's "defecating on himself and sitting on Salmons' blankets." Jail staff observed "red bruises on Larson's head" but did not reassign housing, prior to the deadly assault. Later that night, Larson was heard by nearby inmates pleading, "Stop hitting me" or "Quit hitting me." Jail staff failed to monitor and observe Salmons assault on Larson. Larson's body was discovered on the ground by jail staff at approximately 3:10 a.m. Jail staff returned to the cell with medical personnel "a couple minutes" after 3:22 a.m. (SCSD Report No. 14-284831; <https://www.sacda.org/wp-content/uploads/2019/12/In_Custody_Death_Review_-_Larson_Edward-1.pdf>.)

        (m)    On September 13, 2013, inmate Delarin Butler was attacked by inmate Andre Prajean, and sustained severe injuries. Butler repeatedly warned jail staff that he had been threatened with harm by Prajean prior to the assault. Jail staff ignored Butler's warnings, Prajean threats, and the need to reassign housing. Jail staff also ignored Butler's need for medical attention, for an extended period after the assault occurred. A civil rights lawsuit was filed and settled for $2,000,000. (*Butler v. County of Sacramento*, Superior Court of California, County of Sacramento, Case No. 34-2014-00168482-CU-PO-GDS.)

        37.    <u>Inmate Supervision, Monitoring, and Observation</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a policy or custom whereby jail staff inadequately supervise, monitor, and observe inmates and areas in which inmates are confined, including inadequate monitoring of video/audio feeds, untimely safety/cell checks and responses to emergency alerts, and general inattentiveness. For example:

        (a)    On February 15, 2022, inmate Anthony Galley suffered a seizure caused by severe alcohol withdrawal and died at the Sacramento County Main Jail. Two days earlier, Galley was observed to be intoxicated upon booking and reported a documented history of alcohol use disorder and addiction. Jail staff failed to utilize or implement necessary alcohol detoxification protocols for Galley. Galley was confined to a holding cell without adequate monitoring and was ignored until he was found unresponsive. (*Mays* ECF No. 153-4, 162-1 at 76.) A civil rights lawsuit was filed. (*Galley v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:23-cv-00325-WBS-AC.) The case remains

13

pending.

(b)    On September 28, 2021, inmate Faron Mello testified regarding inadequate monitoring at the Sacramento County Main Jail: "[T]he main jail, it's bad. It's really like, you could die in the county jail over the simplest things and there's really no -- they're not coming to help you. . . But if you're trapped in that cell and you have any type of medical or emergency, it's going to take them a while. . . [I]t's a delay in [response to incidents occurring inside of cells] because you have to press the button. They're not just going to come in there. . . There's a delayed response every time anything happens inside that cell, it's going to take you a while to respond. So if you fall in that cell, it's going to be bad. You're probably going to die in that cell. If you're in that cell with somebody that really wants to get to you, they're going to be able to have their way into you before. It takes hours for the next deputy to walk. So without that time -- depends on what time the clock is, you'll be in that cell waiting for that next floor check, which is an hour." (Deposition of Faron Mello, *Estate of Thomas v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-00903-KJM-DB.)

(c)    On July 24, 2021, inmate Timothy Noble died while withdrawing from opiates at the Sacramento County Main Jail. Days earlier, Noble was booked into the jail and began receiving treatment for opiate withdrawal. Jail staff did not provide Noble with special housing or monitoring. Noble's cellmate observed, but jail staff did not recognize, that Noble did not eat or drink for two days prior to his death. (SCSD Report No. 2021-224861; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Noble-2021-.pdf>.)

(d)    On May 28, 2021, inmate Karl Hutton choked on food inside of his cell at the Sacramento County Main Jail, and died of "Asphyxia due to choking." Hutton was a mental health patient housed in a continuously-monitored medical housing unit. Hutton choked on food inside of his cell. But jail staff failed to monitor Hutton and did not discover that he was choking and in distress until approximately 40 minutes later after he was dead. (SCSD Report No. 2021-159244; <https://www.sacda.org/wp-content/uploads/2022/10/Hutton-ICD-Review-2021-.pdf>.)

(e)    On March 17, 2021, Sacramento County Sheriff's Department deputy Hermelindo Rubio testified about the jail's intercom system present inside of cells and used for monitoring inmates at the Sacramento County Main Jail, describing that the conversations of inmates inside of cells can be

14

heard "[o]nly if they're talking loud enough. If they're talking quiet, you can't hear it." (Deposition of Hermelindo Rubio, *Estate of Thomas v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-00903-KJM-DB.)

      (f)    On August 11, 2020, inmate Herman Johnson died at the Sacramento County Main Jail. Johnson was in custody for attempted murder and a violation of parole. During his incarceration, Johnson was written-up for "behavior" in 51 reports and exhibited suicidal ideations on 18 occasions. But jail staff did not provide Johnson with special housing or monitoring and he was found unresponsive inside of his cell. (SCSD Report No. 2020-0256542; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Review-Johnson-Herman-.pdf>.)

      (g)    On August 4, 2020, inmate Travis Welde overdosed at the Sacramento County Main Jail, and died of "hemopericardium due to a ruptured acute myocardial infarction resulting from mixed drug intoxication." Days earlier, Welde was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." But Welde's urine drug screening test was positive for amphetamines, methamphetamines, THC, MDMA, and opiates. Welde was "engaging in erratic behavior, such as kicking his door and talking nonsensically," and, on August 2, 2020, was transferred to the mental health housing unit. Welde's condition continued to deteriorate, including "smear[ing] feces on himself and his cell walls," "talking to himself" and "yelling unintelligibly," "sweating" or appearing "wet," "flail[ing] his arms," and "sit[ting] and stand[ing] back up repeatedly." On August 3, 2020, Welde told staff that he was "detoxing." But jail staff ignored to threat that Welde was detoxing because "nursing staff believed Welde was outside the time period for detoxing from drug use due to the length of time Welde had been in the jail." Later, the jail's mental health staff concluded that Welde was "gravely disabled" and he was "placed him on the waiting list for a higher level of mental health care." On August 4, 2020, Welde was "standing naked at the cell door," "breathing heavily," and "bouncing back and forth on the balls of his feet." Jail staff asked Welde if he was okay and, in response, Welde "grunted and shook his head." But jail staff continued to ignore him. An hour later, Welde was found lying "face down and naked" on the floor. Jail staff continued to ignore him. Later, jail staff entered the cell and determined that Welde was not breathing and had no pulse. (SCSD Report No. 2020-248721; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Review-

Welde-.pdf>.)

(h)     On December 9, 2019, inmate Antonio Thomas was beaten into a coma by cellmate Joshua Vaden at the Sacramento County Main Jail, and later died from "complications of anoxic encephalopathy associated with assault." Thomas and Vaden had extensive mental health histories known to jail staff, and complaints reflecting difficulties with cellmates based on prior incarceration at the jail. Thomas was held on a probation violation, and Vaden was held on charges of murder. Thomas and Vaden were housed together in the jail's general population. Vaden submitted a grievance that he did not want to be housed with Thomas which was ignored by jail staff. Vaden attacked Thomas, who repeatedly activated the emergency button in his cell during the attack. Jail staff called the cell in response to the emergency button's activation but, when no response was received, ignored the emergency button's activation. Later, jail staff received notice from an inmate that there was a "man down" in the cell. Jail staff responded to the cell and found Thomas unconscious, more than 10 minutes after the activation of the emergency button inside of the cell. The jail "supervisor's overview" of the classification and housing of Thomas and Vaden found no deficiencies or policy violations by jail staff. A civil rights lawsuit was filed and settled for $1,500,000. (*Estate of Thomas v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-00903-KJM-DB.)

(i)     On July 19, 2019, inmate Nicholas Overbey was found dead inside of his cell at the Sacramento County Main Jail. Overbey was assigned to the jail's special housing but was ignored and unmonitored by jail staff. Overbey's cellmate pressed the emergency call button located inside of the cell and informed jail staff that Overbey was not breathing. Jail staff responded and found Overbey lying on his back foaming at the mouth. Jail staff rubbed Overbey's sternum causing blood and other fluids to expel from his nose and mouth. Overbey's cellmate reported that he "had not been moving for at least a day." (SCSD Report No. 2019-255337; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Overbey.pdf>.)

(j)     On July 8, 2019, inmate Bryan Debbs was beaten, stabbed, and choked during a nearly 30-minute continuous assault by cellmate Christian Ento at the Sacramento County Main Jail, and later died of "complications of neck compression." Days earlier, Debbs and Ento were classified by jail staff as "gravely disabled" as housed together in a continuously video-monitored cell. Jail staff failed to

16

observe the monitor as Ento and assaulted Debbs. A civil rights lawsuit was filed and partially settled for $600,000. (*Estate of Debbs v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-01153-TLN-DB.) The remainder of the case is pending.

(k)     On June 11, 2019, inmate Andrew Armstead overdosed at the Sacramento County Main Jail, and died of "methamphetamine intoxication." Armstead was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." A day after booking, Armstead was summoned for a classification interview but failed to appear. Later, jail staff observed Armstead inside of his cell and non-responsive on a bunk. Later, Armstead's cellmate pressed the emergency intercom button inside the cell and reported that Armstead was non-responsive. Later, jail staff responded to the cell and observed that Armstead had no pulse. Armstead's blood was found to contain amphetamine and methamphetamine. (SCSD Report No. 2019-204534; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Armstead.pdf>.)

(l)     On April 13, 2019, inmate Simmie McDade was kicked and stomped during an assault by inmate Jesse Mansfield at the Sacramento County Main Jail, and later died of "blunt force injuries to the head." McDade and Mansfield were confined in a "sobering cell." Jail staff failed to monitor the cell, despite the cell being continuously video-monitored. Jail staff conducted a cell check and observed Mansfield kicking McDade on the side of the head as McDade lay on the floor. Jail staff failed to possess keys necessary to open the cell, intervene, and provide aid to McDade during the attack. Jail staff left the cell, retrieved cell keys, and returned to open the cell door, as Mansfield continued to kick and stomp McDade on the head during jail staff's delayed response. Eventually, jail staff terminated Mansfield's assault on McDade. McDade coughed-up and choked on his own blood, struggled to breathe, turned "purple in color" as his face began to swell, and was unresponsive as blood run out of his mouth, nose, and his left ear. More than 10 minutes after Mansfield was discovered by jail staff assaulting McDade, medics from the Sacramento Fire Department arrived and took over McDade's medical treatment. (SCSD Report No. 2019-0127418; <https://www.sacda.org/wp-content/uploads/2022/07/McDade-ICD.6.27.22.pdf>.)

(m)     On June 16, 2017, inmate Clifton Harris was beaten into a coma by inmate Willie Roberson, and later died from his injuries. Jail staff housed Harris, a gay man, with Roberson, who was

known to be violent and mentally ill. Shortly before the assault, Harris requested jail staff to change his cellmate assignment but jail staff failed to do so. Jail staff failed to monitor and intervene when Roberson beat Harris into a coma. (SCSD Report No. 2017-0197587; <u>Sacramento News & Review</u>, *'What happened to our brother?'* (Aug. 30, 2018), available at:

<https://www.newsreview.com/sacramento/content/what-happened-to-our-brother/26996966/>.)

(n)  On January 16, 2015, inmate Choi Saeteurn was attacked and smothered with a blanket by inmate Khot Panyanouvong, and died from "blunt force injuries and asphyxia." Jail staff failed adequately to assign housing to and monitor Saeteurn and Panyanouvong. Saeteurn's body was discovered by jail staff at approximately 5:38 a.m. but medical staff did not arrive and attempt resuscitation efforts until approximately 5:52 a.m. Saeteurn died from blunt force injuries and asphyxia. (SCSD Report No. 15-12687; <https://www.sacda.org/wp-content/uploads/2019/12/In_Custody_Death_Review_-_Saeteurn_Choi.pdf>.)

(o)  On December 14, 2014, inmate Edward Larson was attacked by Inmate Ernest Salmons, and died from "blunt fore injuries," including a laceration to the forehead and multiple rib fractures. Larson's previous cellmate had complained and received reassignment based on Larson's "hygiene, masturbating, and lewd comments." Larson was reassigned to housing with Salmons, who also complained of Larson's "defecating on himself and sitting on Salmons' blankets." Jail staff observed "red bruises on Larson's head" but did not reassign housing, prior to the deadly assault. Later that night, Larson was heard by nearby inmates pleading, "Stop hitting me" or "Quit hitting me." Jail staff failed to monitor and observe Salmons assault on Larson. Larson's body was discovered on the ground by jail staff at approximately 3:10 a.m. Jail staff returned to the cell with medical personnel "a couple minutes" after 3:22 a.m. (SCSD Report No. 14-284831; <https://www.sacda.org/wp-content/uploads/2019/12/In_Custody_Death_Review_-_Larson_Edward-1.pdf>.)

38.  <u>Failure to Report In-Custody Deaths</u>: Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT sometimes fail to report the deaths of persons who sustain critical injuries while in-custody at jail facilities but later die outside of jail facilities. For example, on June 16, 2017, inmate Clifton Harris was beaten into a coma by his cellmate in the Sacramento County Main Jail. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT

1  "released" Harris from custody while he was comatose but before he died eight months later as a result of

2  the injuries he sustained in-custody. Defendants COUNTY OF SACRAMENTO and SACRAMENTO

3  COUNTY SHERIFF'S DEPARTMENT did not report Harris' death as an in-custody death. (Sacramento

4  News & Review, *The Dungeon Master* (Sep. 22, 2020), available at:

5  <https://sacramento.newsreview.com/2020/09/22/the-dungeon-master/>; Sacramento Bee, *Sacramento*

6  *CA sheriff won't tell public about jail deaths* (Aug. 17, 2021), available at:

7  <https://www.sacbee.com/news/local/article253422244.html>.)

8      39.    Delayed Investigation of In-Custody Incidents: Defendants COUNTY OF

9  SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER

10  maintain a deficient policy and custom of unreasonable delays in investigating in-custody incidents,

11  injuries, and deaths occurring at jail facilities, including personnel's potential misconduct and policy

12  violations and the need for new or different policies and procedures to prevent future harm. For example:

13      (a)    The *Mays* consent decree required creation and implementation of policies related

14  to "Review of Custody Death." Defendants COUNTY OF SACRAMENTO and SACRAMENTO

15  COUNTY SHERIFF'S DEPARTMENT failed to comply, where a monitoring report found: "found that

16  mortality reviews were not timely and consisted of the chronology of care with no meaningful analysis of

17  the appropriateness of care. The reviews failed to identify lapses in care or opportunities for

18  improvement. There were extended delays in obtaining death certificates and autopsy reports, which

19  delayed the final mortality report." The most recent Third Monitoring Report of the Medical Consent

20  Decree found: "With some exceptions, final mortality reviews still lack identification of lapses in care,

21  system issues, or opportunities for improvement. . . . In summary, the mortality review process does not

22  reliably and consistently identify lapses in care and opportunities for improvement. . . . In summary,

23  record review of deaths during this monitoring period showed significant lapses of care, and in some

24  cases preventable deaths." (*Mays* ECF No. 162-1 at 79–94 (emphasis omitted).)

25      (b)    The in-custody death investigation of Richard Martin, who was assaulted at the jail

26  on December 31, 2019, was unreasonably delayed for more than two years.

27      (c)    The in-custody death investigation of Antonio Thomas, who was assaulted at the

28  jail on December 9, 2019, was unreasonably delayed for more than two years.

1   (d)    The in-custody death investigation of Bryan Debbs, who was assaulted at the jail

2   on July 8, 2019, was unreasonably delayed for more than two years.

3   (e)    The in-custody death investigation of Simmie McDade, who was assaulted at the

4   jail on April 13, 2019, was unreasonably delayed for more than two years.

5   40.    Media Reporting on Jail Conditions: Defendants COUNTY OF SACRAMENTO and

6   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's deficient policies and customs are

7   documented in numerous media accounts and reporting. For example:

8   (a)    CapRadio, *Grand jury calls for Sacramento County jail improvements, warns of*

9   *receivership risk* (June 5, 2023), available at: <https://www.capradio.org/articles/2023/06/05/grand-jury-

10  calls-for-sacramento-county-jail-improvements-warns-of-receivership-risk/> ("Sacramento County risks

11  losing control of its two jails to a court-appointed receiver if it doesn't improve detention conditions, a

12  grand jury warned in a report…").

13  (b)    The Sacramento Bee, *Sacramento Main Jail Allows Inmates to Suffer During*

14  *COVID* (Nov. 9, 2021), available at: <https://www.sacbee.com/opinion/op-ed/article255652546.html>

15  ("Sacramento is on track to have the deadliest jail per capita in California.").

16  (c)    Sacramento News & Review, *The Dungeon Master* (Sep. 22, 2020), available at:

17  <https://sacramento.newsreview.com/2020/09/22/the-dungeon-master/> ("Sacramento County had the

18  third most jail deaths in the state last year," despite "Sacramento County ha[ving] a smaller population

19  than [] seven [other] counties"; County jail facilities have "lost more than 40 people in his jails over the

20  past decade, according to state justice data and news accounts…").

21  (d)    *Marshall v. Superior Court*, No. S263043, 2020 Cal. LEXIS 4730, at *10 (Cal.

22  July 15, 2020) (Liu, J., dissenting) ("Based on the allegations contained in the 54 inmate declarations

23  before us, petitioners have made a prima facie case that the Sacramento County Sheriff is acting with

24  deliberate indifference to the health and safety of the inmates in violation of the Eighth Amendment to

25  the federal Constitution. The declarations paint a grim picture of the inmates' conditions of

26  confinement." (internal citations omitted).)

27  (e)    The Sacramento Bee, *Questions Persist Over Jail Health Care* (Dec. 18, 2005),

28  available at <http://www.parentadvocates.org/nicecontent/dsp_printable.cfm?articleID=6557>

20

(describing numerous incidents of jail staff's failure to provide inmates with necessary medical care).

41.     <u>Records Destruction Policies/Failure to Retain Records</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain an official written policy, also known as a "General Order," concerning "Destruction of Records" and "Complaints and Disciplinary Policies and Procedures." The records-destruction policy expressly provides: "Records of complaints, investigations and dispositions shall be retained by Internal Affairs for a period of at least five and one half years." Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER actively employ the records-destruction policies to destroy records as soon as permitted by policy, including records documenting inmate deaths and internal affairs records. For example, as of January 2022, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT failed to retain records concerning in-custody deaths at jail facilities older than 2017. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's records-destruction policies and practices obfuscate histories of indifference and misconduct, especially when combined with failures to report/investigative delays relating to in-custody incidents.

42.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER do not meaningfully discipline, re-train, correct, or otherwise penalize jail staff involved in critical incidents where preventable deaths and injuries are sustained by inmates, including those described above. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's routine failure to hold jail staff accountable has created and encouraged an environment where jail staff believe they can "get away with anything."

43.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of DELION JOHNSON.

44.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

21

1  DEPARTMENT, and JIM COOPER's inadequate policies, customs, training, supervision, and control of

2  personnel and inmates was a moving force behind and contributed to the death of DELION JOHNSON.

3  **FIRST CLAIM**

4  **Deliberate Indifference**

5  **(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

6       45.     Plaintiff ESTATE OF DELION JOHNSON asserts this Claim (pursuant to California

7  Code of Civil Procedure section 377.30) against Defendants COUNTY OF SACRAMENTO,

8  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

9       46.     The allegations of the preceding paragraphs 1 to 44 are realleged and incorporated, to the

10  extent relevant and as if fully set forth in this Claim.

11       47.     Defendants DOE 1 to 20 inadequately classified, assigned, housed, supervised, monitored,

12  and responded to DELION JOHNSON, putting him at substantial risk of suffering serious harm, without

13  taking reasonable available measures to abate that risk, where a reasonable official in the circumstances

14  would have appreciated the high degree of risk involved, in violation of the Fourteenth Amendment to

15  the U.S. Constitution.

16       48.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

17  DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in

18  harm to DELION JOHNSON, in violation of the Fourteenth Amendment to the U.S. Constitution.

19       49.     Defendants JIM COOPER and DOE 1 to 20's actions and inactions were motivated by

20  evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly

21  or oppressively done.

22       50.     DELION JOHNSON was injured as a direct and proximate result of Defendants

23  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

24  COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DELION JOHNSON

25  to receive compensatory/survival damages against Defendants COUNTY OF SACRAMENTO,

26  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and

27  punitive damages against Defendants JIM COOPER and DOE 1 to 20.

28       WHEREFORE, Plaintiff ESTATE OF DELION JOHNSON prays for relief as hereunder appears.

## SECOND CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

51. Plaintiffs D.J., M.J., and MICHELLE COOPER assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

52. The allegations of the preceding paragraphs 1 to 44 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

53. Plaintiffs D.J., M.J., and MICHELLE COOPER shared a close relationship and special bond with DELION JOHNSON, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving relationship, prior to his death.

54. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs D.J., M.J., and MICHELLE COOPER's familial association with DELION JOHNSON, in the violation of the Fourteenth Amendment to the U.S. Constitution.

55. Defendants JIM COOPER and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

56. Plaintiffs D.J., M.J., and MICHELLE COOPER were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory/wrongful death damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER and DOE 1 to 20.

WHEREFORE, Plaintiffs D.J., M.J., and MICHELLE COOPER pray for relief as hereunder appears.

\ \ \

\ \ \

1

## THIRD CLAIM

2

**Unwarranted Interference with Familial Association**

3

**(U.S. Const. Amend. I; 42 U.S.C. § 1983)**

4       57.      Plaintiffs D.J., M.J., and MICHELLE COOPER assert this Claim against Defendants

5   COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

6   COOPER, and DOE 1 to 20.

7       58.      The allegations of the preceding paragraphs 1 to 44 are realleged and incorporated, to the

8   extent relevant and as if fully set forth in this Claim.

9       59.      Plaintiffs D.J., M.J., and MICHELLE COOPER shared a close relationship and special

10   bond with DELION JOHNSON, which included deep attachments, commitments, and distinctively

11   personal aspects of their lives and was typical of a loving relationship, prior to his death.

12       60.      Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

13   DEPARTMENT, JIM COOPER, and DOE 1 to 20 caused the unwarranted interference with, and

14   premature termination of, Plaintiffs D.J., M.J., and MICHELLE COOPER's familial association with

15   DELION JOHNSON, in the violation of the First Amendment to the U.S. Constitution.

16       61.      Defendants JIM COOPER and DOE 1 to 20's actions and inactions were motivated by

17   evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly

18   or oppressively done.

19       62.      Plaintiffs D.J., M.J., and MICHELLE COOPER were injured as a direct and proximate

20   result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

21   DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling them to receive

22   compensatory/wrongful death damages against Defendants COUNTY OF SACRAMENTO,

23   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and

24   punitive damages against Defendants JIM COOPER and DOE 1 to 20.

25       WHEREFORE, Plaintiffs D.J., M.J., and MICHELLE COOPER pray for relief as hereunder

26   appears.

27   \ \ \

28   \ \ \

24

## FOURTH CLAIM

### Failure to Summon Medical Care

### (Cal. Gov. Code § 845.6)

63.     Plaintiff ESTATE OF DELION JOHNSON asserts this Claim (pursuant to California Code of Civil Procedure section 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

64.     The allegations of the preceding paragraphs 1 to 44 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

65.     Defendants DOE 1 to 20 knew or had reason to know that DELION JOHNSON was in need of immediate medical care and failed to take reasonable action to summon medical care, in violation of California Government Code section 845.6.

66.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to DELION JOHNSON, in violation of California Government Code section 845.6.

67.     Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code sections 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER and DOE 1 to 20.

68.     Defendants JIM COOPER and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

69.     DELION JOHNSON was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DELION JOHNSON to receive compensatory/survival damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF DELION JOHNSON prays for relief as hereunder appears.

25

## FIFTH CLAIM

### Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

70.     Plaintiff ESTATE OF DELION JOHNSON asserts this Claim (pursuant to California Code of Civil Procedure section 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

71.     The allegations of the preceding paragraphs 1 to 44 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

Deliberate Indifference

72.     Defendants DOE 1 to 20 inadequately classified, assigned, housed, supervised, monitored, and responded to DELION JOHNSON, putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, with deliberate indifference or reckless disregard of rights protected by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 7(a) of the California Constitution.

73.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to DELION JOHNSON, with deliberate indifference or reckless disregard of rights protected by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 7(a) of the California Constitution.

Failure to Summon Medical Care

74.     Defendants DOE 1 to 20 knew or had reason to know that DELION JOHNSON was in need of immediate medical care and failed to take reasonable action to summon medical care, with deliberate indifference or reckless disregard of rights protected by California Government Code section 845.6.

75.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to DELION JOHNSON, with deliberate indifference or reckless disregard of rights protected by California Government Code section 845.6.

26

Common Allegations

76.     Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code sections 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER and DOE 1 to 20.

77.     Defendants JIM COOPER and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

78.     DELION JOHNSON was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DELION JOHNSON to receive compensatory/survival and treble damages and civil/statutory penalties against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF DELION JOHNSON prays for relief as hereunder appears.

**SIXTH CLAIM**

**Intentional Infliction of Emotional Distress**

79.     Plaintiff ESTATE OF DELION JOHNSON asserts this Claim (pursuant to California Code of Civil Procedure section 377.30) against Defendants JIM COOPER and DOE 1 to 20.

80.     The allegations of the preceding paragraphs 1 to 44 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

81.     Defendants DOE 1 to 20 engaged in outrageous conduct, including by inadequately classifying, assigning, housing, supervising, monitoring, and responding to DELION JOHNSON and violating California Government Code section 845.6, with intent or reckless disregard of the probability that DELION JOHNSON would suffer emotional distress and he did suffer severe emotional distress.

82.     Defendant JIM COOPER engaged in outrageous conduct, including maintaining policies or customs of action and inaction which resulted in harm to DELION JOHNSON, with intent or reckless disregard of the probability that DELION JOHNSON would suffer emotional distress and he did suffer

27

1    severe emotional distress.

2        83.    Defendants JIM COOPER and DOE 1 to 20's actions and inactions constituted

3    oppression, fraud, and/or malice resulting in great harm.

4        84.    DELION JOHNSON was injured as a direct and proximate result of Defendants JIM

5    COOPER and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DELION JOHNSON

6    to receive compensatory/survival and punitive damages against Defendants JIM COOPER and DOE 1 to

7    20.

8        WHEREFORE, Plaintiff ESTATE OF DELION JOHNSON prays for relief as hereunder appears.

9                            **SEVENTH CLAIM**

10                              **Negligence**

11       85.    Plaintiff ESTATE OF DELION JOHNSON asserts this Claim (pursuant to California

12   Code of Civil Procedure section 377.30) against Defendants COUNTY OF SACRAMENTO,

13   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

14       86.    The allegations of the preceding paragraphs 1 to 44 are realleged and incorporated, to the

15   extent relevant and as if fully set forth in this Claim.

16       87.    Defendants DOE 1 to 20 owed a duty of care to DELION JOHNSON and breached that

17   duty, including by inadequately classifying, assigning, housing, supervising, monitoring, and responding

18   to DELION JOHNSON and violating California Government Code section 845.6.

19       88.    Defendants JIM COOPER owed a duty of care to DELION JOHNSON, including a

20   special relationship with DELION JOHNSON, as a jailer, and Defendants DOE 1 to 20, as an employer,

21   and breached that duty, including by maintaining policies or customs of action and inaction which

22   resulted in harm to DELION JOHNSON and violating California Government Code section 845.6.

23       89.    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

24   DEPARTMENT owed a duty of care under California Government Code section 845.6 and breached that

25   duty, including by maintaining policies or customs of action and inaction which resulted in harm to

26   DELION JOHNSON.

27       90.    Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

28   DEPARTMENT is vicariously liable, through the principles of *respondeat superior* and pursuant to

                                  28

California Government Code sections 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER and DOE 1 to 20.

91.     Defendants JIM COOPER and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

92.     DELION JOHNSON was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DELION JOHNSON to receive compensatory/survival damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF DELION JOHNSON prays for relief as hereunder appears.

## EIGHTH CLAIM

### Wrongful Death

### (Cal. Code Civ. Proc. § 377.60)

93.     Plaintiffs D.J. and M.J. assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

94.     The allegations of the preceding paragraphs 1 to 44 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

95.     Defendants DOE 1 to 20 caused DELION JOHNSON's death by wrongful act and neglect, including by maintaining policies or customs of action and inaction which resulted in harm to DELION JOHNSON and violating California Government Code section 845.6.

96.     Defendants JIM COOPER caused DELION JOHNSON's death by wrongful act and neglect, including by maintaining policies or customs of action and inaction which resulted in harm to DELION JOHNSON and violating California Government Code section 845.6.

97.     Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT caused DELION JOHNSON's death by wrongful act and neglect, including by

1  maintaining policies or customs of action and inaction and violating California Government Code section

2  845.6.

3      98.      Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

4  DEPARTMENT is vicariously liable, through the principles of *respondeat superior* and pursuant to

5  California Government Code sections 815.2(a), 845.6, for injuries proximately caused by the acts and

6  omissions of employees acting within the scope of employment, including Defendants JIM COOPER and

7  DOE 1 to 20.

8      99.      Defendants JIM COOPER and DOE 1 to 20's actions and inactions constituted

9  oppression, fraud, and/or malice resulting in great harm.

10     100.     DELION JOHNSON died as a direct and proximate result of Defendants COUNTY OF

11 SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1

12 to 20's actions and inactions, entitling Plaintiffs D.J. and M.J. to receive compensatory/wrongful death

13 damages and expenses against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

14 SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against

15 Defendants JIM COOPER and DOE 1 to 20.

16     WHEREFORE, Plaintiffs D.J. and M.J. pray for relief as hereunder appears.

17                          **PRAYER FOR RELIEF**

18     WHEREFORE, Plaintiffs ESTATE OF DELION JOHNSON, D.J., M.J., and MICHELLE

19 COOPER seek Judgment as follows:

20     1.      For an award of compensatory, general, special, and nominal damages (including survival

21 damages and wrongful death damages under federal and state law) against Defendants COUNTY OF

22 SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1

23 to 20, in excess of $30,000,000, according to proof at trial;

24     2.      For an award of exemplary/punitive damages against Defendants JIM COOPER and DOE

25 1 to 20, in an amount sufficient to deter and to make an example of them, because their actions and/or

26 inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to

27 constitutionally and statutorily protected rights, or were wantonly or oppressively done; and/or

28 constituted oppression, fraud, or malice resulting in great harm;

3.     For funeral and/or burial expenses;

4.     For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20, pursuant to California Civil Code sections 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, pursuant to California Civil Code section 818);

5.     For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, California Civil Code section 52.1, California Code of Civil Procedure section 1021.5, and any other statute as may be applicable;

6.     For interest; and

7.     For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: July 5, 2023                                   Respectfully Submitted,

By: _____
    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

    Attorneys for Plaintiffs
    ESTATE OF DELION JOHNSON,
    D.J., M.J., and MICHELLE COOPER

## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF DELION JOHNSON, D.J., M.J., and MICHELLE COOPER.

Dated: July 5, 2023

Respectfully Submitted,

By: _____

Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF DELION JOHNSON,
D.J., M.J., and MICHELLE COOPER

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Johnson v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____