UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of Delion Johnson, et al., | No. 2:23-cv-01304-KJM-JDP |
| Plaintiffs, | ORDER |
| v. | |
| County of Sacramento, et al., | |
| Defendants. | |

Plaintiffs bring this civil rights action under 42 U.S.C. § 1983 against defendants County of Sacramento, the Sacramento County Sheriff's Department and Sheriff Jim Cooper for the death of Delion Johnson.[1] Defendants move to dismiss the complaint for failure to state a claim, and also move to strike portions of the complaint. The court **grants** the motion to dismiss in part and also **grants in part** the motion to strike.

---

[1] Plaintiffs also name 20 Doe defendants but have not identified any by name at this point. If as here defendants' identities are unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m).

I.  **FACTUAL ALLEGATIONS**

On April 4, 2023, jail staff at the Sacramento County Main Jail booked Delion Johnson on serious charges, including attempted murder. Compl. ¶¶ 15, 17, ECF No. 1. He was in the custody of defendants County of Sacramento and Sacramento County Sheriff's Department and was a pretrial detainee at all the relevant times. *Id.* ¶¶ 15–16. Jail staff, including defendants Does 1 to 20, allegedly inadequately processed, booked and searched Mr. Johnson. *Id.* ¶ 18. They also inadequately classified, assigned and housed him. *Id.* ¶ 19. Although "the seriousness of his charges warranted isolated and frequently-supervised housing based on the risk of self-harm or suicide," *id.*, Mr. Johnson was placed in a holding cell with several other inmates and was inadequately monitored, *id.* ¶¶ 21, 27. On information and belief, Mr. Johnson "smuggled lethal quantities of illicit substances into the jail due to Defendants DOE 1 to 20's inadequate processing and booking." *Id.* ¶ 20. He distributed the substances to fellow inmates and ingested lethal quantities of the substances himself. *Id.* ¶¶ 24–25. On April 5, 2023, the day after being booked, he experienced a medical emergency and was pronounced dead around 4:16 p.m. *Id.* ¶¶ 25, 29–30.

Mr. Johnson's holding cell had "audio/video surveillance capabilities," which allowed Does 1 to 20 to adequately monitor inmates. *Id.* ¶ 22. However, Does 1 to 20 "inadequately monitored, checked, and supervised" Mr. Johnson's holding cell. *Id.* ¶ 27. Moreover, the County, Sheriff's Department and Sheriff Cooper's policies and customs did not obligate or require jail staff to adequately monitor his cell. *Id.* ¶ 23. Thus, although Mr. Johnson was visible on the surveillance video distributing and ingesting something from a small bag, *id.* ¶ 26, Does 1 to 20 failed to observe those actions and failed to intervene or prevent him from ingesting the illicit substances, *id.* ¶ 28. Does 1 to 20 could have responded to the emergency more quickly and administered emergency measures, such as administering Narcan[2] or providing cardiopulmonary resuscitation measures; however, they failed to timely observe Mr. Johnson was experiencing a medical emergency. *Id.* ¶ 29.

---

[2] Narcan is "a drug designed to counter the effect of a drug overdose[.]" *United States v. George*, 987 F.2d 1428, 1430 (9th Cir. 1993).

1      Plaintiff Estate of Delion Johnson, appearing by and through Mr. Johnson's biological
2 children and real-parties-in-interest plaintiffs D.J. and M.J. and Mr. Johnson's biological mother
3 plaintiff Michelle Cooper, now bring this action against defendants under 42 U.S.C. § 1983 and
4 several state laws. *See* Compl. ¶¶ 6–13, 45–100. Sheriff Cooper is sued in his individual
5 capacity. *Id.* ¶ 12.

6      Plaintiffs allege Sheriff Cooper is the final policymaker for the County and Sheriff's
7 Department, "including as it relates to the maintenance and operation of jail and detention
8 facilities; training, supervision, and discipline of staff acting under his command; and the
9 safekeeping of inmates/prisoners in his custody." *Id.* ¶ 31. He has been employed by the County
10 and Sheriff's Department in a supervisory and policymaking capacity since 1997 and has served
11 as the Sheriff since 2022.³ *Id.* Plaintiffs allege defendants "maintain and/or acted pursuant to
12 inadequate polices, customs, training, and/or supervision" resulting in the failure to adequately do
13 the following: 1) "book, intake, and receive inmates into the jail"; 2) "classify, assign, and house
14 inmates within the jail"; 3) "discern, assess, and consider risk factors of inmates within the jail";
15 4) "observe, monitor, and supervise inmates within the jail"; 5) "staff the jail with necessary
16 officials and personnel"; 6) "detect and investigate the presence of contraband within the jail";
17 7) "intervene and intercede when dangerous and emergency conditions are present inside the jail"
18 and 8) "summon and provide necessary medical care to inmates within the jail." *Id.* ¶ 32. They
19 further allege defendants were deliberately indifferent to Mr. Johnson's safety and health and

---

³ Although plaintiffs allege Jim Cooper has served as Sheriff since December 2014, Compl. ¶ 31, he was elected as Sheriff in June 2022, *see* Sacramento County, *Official 2022 Primary Election Results* (June 7, 2022), https://results.saccounty.gov/resultsSW.aspx?type=CTY&map=MPRC&shape=Jun2022&eid=2039; *see also* Mem. at 3 n.1, ECF No. 11-1 (indicating he became Sheriff in December 2022); Reply at 2 n.1 (same). The court takes judicial notice of the election results. *See* Fed. R. Evid. 201; *Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (court may take judicial notice of "undisputed matters of public record"). Although the court takes all the allegations in the complaint as true, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

knew or should have known he was at risk of harm because jail staff inadequately performed the responsibilities listed above with respect to the decedent. *Id.* ¶ 33.

In support of their allegations, plaintiffs allege defendants' policies and customs are not compliant with national jail standards. *Id.* ¶ 34. Defendants also are not in compliance with the terms of the Medical Consent Decree ordered in 2020 in a separate class action filed in this court, *Mays v. County of Sacramento*, No. 18-02081 (E.D. Cal.).[4] *Id.* ¶ 35. The parties in *Mays* settled, and the County of Sacramento agreed to certain changes including changes to jail staffing, inmate health services and custodial practices with regards to inmate medical care. *Id.* In the Third Monitoring Report required by the Medical Consent Decree submitted in 2022, the court-appointed subject matter experts note "serious questions about custody and health care training and supervision," after finding inmates remained in booking cells for up to three days after booking. *Id.* ¶ 45(d) (quoting *Mays*, No. 18-02081 (E.D. Cal. Oct. 25, 2022), ECF No. 162-1). Class counsel for the *Mays* class had also informed the County and Sheriff's Department of the reported failures to provide meals for inmates who were booked and awaiting transfer to housing units. *Id.* ¶ 35(e).

Plaintiffs further allege defendants maintain a policy or custom of inadequate classification and assignment of housing and cellmates as well as inadequate assessment of danger or vulnerabilities. *Id.* ¶ 36. They say defendants also maintain a policy or custom of inadequate supervision, monitoring and observation. *Id.* ¶ 37. For example, there have been incidents of inmates in defendants' custody: 1) dying of withdrawal from alcohol or another substance, despite having been observed to be intoxicated and receiving treatment; 2) overdosing and dying, despite having signs of intoxication and drug use; and 3) dying due to assault by other inmates. *Id.* ¶¶ 36–37. Defendants "do not meaningfully discipline, re-train, correct, or otherwise penalize jail staff involved in critical incidents where preventable deaths and injuries are sustained by inmates," and routinely fail to hold jail staff accountable. *Id.* ¶ 42. Plaintiffs allege

---

[4] A court may take judicial notice of undisputed matters of public record, including publicly available court records. *See United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018).

defendants "were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons," including the decedent. *Id.* ¶ 43. They further allege defendants' inadequate policies and customs were the moving forces behind Mr. Johnson's death. *Id.* ¶ 44.

Based on these allegations, plaintiffs bring several state law claims and the following three claims against defendants under 42 U.S.C. § 1983: 1) deliberate indifference in violation of the Fourteenth Amendment; 2) unwarranted interference with familial association in violation of the Fourteenth Amendment; 3) unwarranted interference with familial association in violation of the First Amendment. *See generally* Compl. Defendants move to dismiss the claims against Sheriff Cooper and plaintiffs' *Monell* claims. Mot., ECF No. 11; Mem., ECF No. 11-1. Defendants also move to strike portions of the complaint. Plaintiffs oppose, Opp'n, ECF No. 13, and defendants have replied, Reply, ECF No. 15. The court held a hearing on this matter on November 3, 2023. Mins. Mot. Hr'g, ECF No. 16. Mark Merin and Paul Masuhara, III appeared for plaintiffs. *Id.* Suli Mastorakos appeared for defendants. *Id.*

## II. LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In response, the court begins by assuming the complaint's factual allegations are true, but not its legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citation omitted). The court then determines whether those factual allegations "plausibly give rise to an entitlement to relief" under Federal Rule of Civil Procedure 8. *Id.* at 679; *see* Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). Although a complaint does not need "detailed factual allegations," it must have more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678 (citations omitted).

### III. ANALYSIS

#### A. Plaintiffs Can Sue Sheriff Cooper in His Individual Capacity

First, defendants argue the claims against Sheriff Cooper must be dismissed because the allegations against him are duplicative of the allegations against the County and Sheriff's Department. *See* Mot. at 2;[5] Mem. at 6–7. "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). Here, however, Sheriff Cooper is named in his individual capacity. Compl. ¶ 12. The mere fact the allegations against him largely overlap with the allegations against the County and Sheriff's Department does not shield him from individual liability. *See, e.g.*, *Larez v. City of Los Angeles*, 946 F.2d 630, 640 (9th Cir. 1991). The court denies the motion to dismiss the claims against Sheriff Cooper as redundant.

#### B. *Monell* and Supervisory Liability

Second, defendants argue plaintiffs' allegations against all three defendants are conclusory. Mem. at 7–9. Specifically, defendants argue plaintiffs have not identified a deficient policy or custom sufficient to establish the *Monell* and supervisory liability claims. *Id.* at 9. The court considers whether plaintiffs have sufficiently alleged a policy to establish *Monell* liability and supervisory liability together. *See, e.g.*, *S.R. Nehad v. Browder*, 929 F.3d 1125, 1142 (9th Cir. 2019) (discussing *Monell* and supervisory liability together and considering the same evidence); *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (same).

Under § 1983, a supervisory official may be liable "only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (internal marks and citation omitted). Under the second theory of liability, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a

---

[5] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

repudiation of constitutional rights and is the moving force of a constitutional violation." *Id.* (internal marks and citation omitted). Defendants argue plaintiffs do not state a supervisory liability claim in the complaint and all the allegations against Sheriff Cooper are based solely on his position as a "final policy-making authority." Reply at 3. Defendants appear to mistakenly believe Sheriff Cooper cannot be sued in his individual capacity if he is sued as the individual with final policy-making authority. *See id.*; Opp'n at 13–14. But defendants have cited no authority suggesting plaintiffs cannot bring an individual capacity suit against a supervisory official when the official is the final policy maker. *Cf. Larez*, 946 F.2d at 640 (suit against supervisory official in his individual capacity). While the complaint does not explicitly include the phrase "supervisory liability," plaintiffs have alleged Sheriff Cooper has been employed in a supervisory and policymaking capacity and has maintained the inadequate policies and customs that are the moving forces behind the alleged constitutional violation here. *See* Compl. ¶¶ 31–33. Plaintiffs have alleged a supervisory liability claim against Sheriff Cooper. *See Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) ("[Plaintiff's] allegations that the actions or inactions of the person 'answerable for the prisoner's safe-keeping' caused his injury are therefore sufficient to state a claim of supervisory liability for deliberate indifference."). Whether the allegations are sufficient to state a claim for relief is discussed below under subsections one through three.

A government entity also may be liable under § 1983 if a plaintiff can show "a policy, practice, or custom of the entity [is the] moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To establish *Monell* liability, a plaintiff must prove: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Defendants argue plaintiffs have not sufficiently alleged the second prong of this test, that defendants had a policy. Mem. at 9–12. The Ninth Circuit recognizes four theories establishing municipal liability under *Monell*: "(1) an official policy;

7

(2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Plaintiffs appear to assert *Monell* liability under two theories: 1) pervasive practice or custom, and 2) failure to train, supervise or discipline. *See* Compl. ¶¶ 31–37, 44, 48.

To establish liability under the pervasive custom and policy theory, plaintiffs must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)). A practice or custom may be "inferred from widespread practices[.]" *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001)). However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918. Allegations in a complaint must "not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr*, 652 F.3d at 1216). The allegations also must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

Plaintiffs allege the following policies or customs resulted in the alleged constitutional violations: 1) inadequate classification, assignment of housing and cellmates, and inadequate assessment of danger or vulnerabilities of inmates; and 2) inadequate supervision, monitoring and observation of inmates and untimely safety and cell checks. *See* Compl. ¶¶ 32–33, 36–37, 47. Plaintiffs also allege failure to train, supervise or discipline. *See id.* ¶¶ 31–32, 42, 44. The court considers whether plaintiffs have sufficiently alleged each theory of liability in turn.

1. **Inadequate Classification, Housing Assignment and Danger Assessment**

To support their allegations of inadequate classification, assignment of housing and cellmates, and inadequate assessment of danger or vulnerabilities of inmates, plaintiffs identify thirteen incidents in the past ten years where inmates died in defendants' custody due to alcohol or drug withdrawal, overdose, suicide and assaults by other inmates. *See id.* ¶ 36. The inmates who died from alcohol or drug withdrawal and overdose had either tested positive for illicit substances in a urine test, *id.* ¶¶ 36 (d), (h), or exhibited signs of withdrawal, *id.* ¶¶ 36(a)–(b). It is unclear how these prior incidents relate to the decedent's death or are otherwise relevant in this case. Here, plaintiffs do not allege Mr. Johnson was suicidal and/or assaulted by other inmates. *Cf. id.* ¶¶ 36(c), (e)–(g), (i)–(m). Although the inadequate assignment of housing and cellmates may have caused the other inmates' injuries in the prior incidents, plaintiffs do not detail how inadequate assignment of housing and cellmates relate to the decedent's injuries. Additionally, there is no allegation Mr. Johnson exhibited signs of substance withdrawal or suicidal ideation, or had consumed illicit substances prior to being classified, such that jail staff inadequately assessed his danger or vulnerability before assigning him to a cell. *Cf. id.* ¶¶ 36 (a)–(d), (h). Plaintiffs have not sufficiently stated *Monell* and supervisory liability claims under the theory of liability based on inadequate classification, assignment of housing and cellmates and inadequate assessment of danger or vulnerabilities of inmates. Defendants' motion is **granted** as to this theory of *Monell* and supervisory liability.

2. **Inadequate Supervision and Monitoring**

To support their allegations of inadequate supervision, monitoring and observation of inmates and untimely safety and cell checks, plaintiffs have similarly identified prior incidents of other inmate deaths and injuries while in defendants' custody. *Id.* ¶ 37. Many of the incidents overlap with the incidents identified above. Plaintiffs have identified fifteen incidents within the past ten years where they say a lack of monitoring and observation of inmates has resulted in delays in care and, ultimately, death from overdose, withdrawal and assault by other inmates. *Id.* Twelve of the alleged incidents occurred between April 2019 and February 2022; they all

occurred within four to five years prior to the decedent's death. *Id.* Although the specific facts are distinguishable, they all support the allegation that the same conduct contributed to the incident: inadequate supervision, monitoring and observation within the jail. *Sanchez v. County of Sacramento*, No. 19-01545, 2021 WL 4066262, at *5 (E.D. Cal. Sept. 7, 2021) ("[T]he offer of 'multiple incidents of alleged violations' is often adequate at the motion to dismiss stage." (citation omitted)). In this respect, plaintiffs' allegations plausibly allege the existence of a qualifying policy or custom and give defendants fair notice to enable them to defend effectively. Plaintiffs have alleged: (1) defendants failed to adequately monitor and observe Mr. Johnson, despite having the ability to do so; (2) defendants did not see Mr. Johnson ingest the illicit substances and; (3) because of the lack of adequate monitoring and observation, defendants did not timely provide medical care to prevent or treat the overdose. *See id.* ¶¶ 24, 26–29.

### 3. Failure to Train, Supervise and Discipline

Plaintiffs also allege defendants failed to train, supervise and discipline jail staff. Compl. ¶¶ 42, 44. A municipality's failure to train employees may rise to the level of an official policy under *Monell*, but the omission must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton*, 489 U.S. at 388). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty v. Brown*, 520 U.S. 397, 410 (1997). When municipal actors have actual or constructive notice of a deficiency in their training programs and choose to retain those programs, they can be deemed deliberately indifferent. *Connick*, 563 U.S. at 61. A plaintiff can show deliberate indifference either with a single violation with a "highly predictable consequence" or a pattern of similar constitutional violations. *Bryan Cnty.*, 520 U.S. at 409.

Plaintiffs do not support their allegation of lack of training regarding inmate classification, assignment and housing with allegations of a pattern of similar constitutional violations. As noted, the underlying incidents plaintiffs allege of inadequate classification, assignment and housing are too dissimilar from the facts of this case. Unlike the prior incidents, there is no

10

allegation Mr. Johnson exhibited signs of suicide, overdose or withdrawal when he was booked, nor is there any allegation he was assaulted by other inmates. *Cf.* Compl. ¶ 36. None of the prior incidents involved inmates overdosing from illicit substances they themselves smuggled into the jail. The incidents are too dissimilar to have put defendants on notice that their training was deficient regarding inmate classification, assignment and housing. *See Connick*, 563 U.S. at 62.

However, plaintiffs have sufficiently alleged inadequate training with regards to inmate supervision, monitoring and observation. Plaintiffs have supported their allegation with details of prior incidents of inmate deaths in the jail. *See* Compl. ¶ 37. Plaintiffs also point to the Third Monitoring Report required by the *Mays* Consent Decree, submitted in 2022, which notes "serious questions about custody and health care training and supervision" after finding inmates were in booking cells for up to three days after booking. *Id.* ¶ 35(d). Class counsel in the *Mays* case had informed defendants regarding the failure to provide meals for inmates who were booked and waiting to be moved to housing units. *Id.* ¶ 35(e). Although the specific facts of the prior incidents and the facts underlying the Consent Decree are dissimilar, as noted, the conduct is the same: inadequate supervision, monitoring and observation. Plaintiffs also have alleged defendants routinely fail to hold jail staff accountable and were on notice regarding the need to train staff in these areas related to their work. *Id.* ¶¶ 42–43. Here, the allegations in the complaint plausibly suggest a failure to train, supervise and discipline regarding inmate supervision, monitoring and observation.

### 4. Summary—*Monell* and Supervisory Liability

Because plaintiffs have alleged policies sufficient to establish *Monell* liability against the County and Sheriff's Department and supervisory liability against Sheriff Cooper, defendants' motion to dismiss is **denied in part.** As to plaintiffs' theory of liability based on inadequate classification, housing assignment and danger assessment, defendants' motion is **granted in part**. To the extent defendants also argue plaintiffs have not sufficiently alleged other elements of *Monell* liability and supervisory liability or elements of plaintiffs' individual claims, defendants have not developed those arguments in this motion, *see generally* Mem., and the court declines to review the sufficiency of plaintiffs' allegations on its own initiative, *cf. Sparling v. Hoffman*

11

*Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (court may note inadequacy of a complaint on its own initiative and dismiss a complaint after giving plaintiff notice and opportunity to respond).

### C. Motion to Strike

Defendants also move to strike irrelevant paragraphs in plaintiffs' complaint. Mem. at 12. Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Courts generally disfavor motions to strike and will not grant them unless it is "clear that the matter to be stricken could have no possible bearing on the litigation." *Walters v. Fid. Mortg. of Cal.*, 730 F. Supp. 2d 1185, 1196 (E.D. Cal. 2010) (citation omitted). Nonetheless, defendant's motion is **granted in part as to paragraph 36,** given it is unclear how the allegations there of incidents of inmate classification, assignment and housing are relevant or related to the decedent's injury. However, the court cannot conclude the other allegations in the complaint defendants seek to have stricken have no possible bearing on this case at this time. Although those allegations include details about other cases with distinguishable facts, they may be relevant to other elements of plaintiffs' claims the court does not address in this motion. *See* Opp'n at 23–27. The motion to strike is **granted in part and denied in part.**

### IV. CONCLUSION

For the reasons above, defendants' motion to dismiss is **granted in part and denied in part** as explained above. Defendants' motion to strike is **granted in part as to paragraph 36** and **denied in part** as to the other challenged provisions. Plaintiffs may file an amended complaint within 21 days if they choose to address the deficiencies noted in this order.

This order resolves ECF No. 11.

IT IS SO ORDERED.

DATED: January 24, 2024.

CHIEF UNITED STATES DISTRICT JUDGE

12